```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION

THOMAS BROWN, individually, etc.,  )
                                   )
                Plaintiff,         )
                                   )
     v.                            )    No.  06 C 617
                                   )
COUNTY OF COOK, et al.,            )
                                   )
                Defendants.        )
```

## MEMORANDUM OPINION AND ORDER

Former Cook County Sheriff Michael Sheahan ("Sheahan"), present Sheriff Thomas Dart ("Dart"), James Ryan ("Ryan") and Citizens for Michael F. Sheahan Campaign Fund ("Citizens for Sheahan") move separately (although adopting some of each others' submissions by reference), both under Fed. R. Civ. P. ("Rule") 12(b)(1) and under Rule 12(b)(6), to dismiss allegations brought against them and Cook County by Thomas Brown ("Brown") in his First Amended Class Action Complaint ("FAC"). This action, relating to alleged extortionate activity in the Cook County Sheriff's Office ("Sheriff's Office"), is brought against Sheahan in his individual and official capacity,[1] Dart (who was the Chief of Staff under Sheahan) in his individual and official capacity,

---

[1] Brown concedes that it is unnecessary (indeed, it is inappropriate) to name Sheahan in his former official capacity because that official capacity was as Sheriff of Cook County (Brown's Resp. Mem. n.1). But no order of substitution under Rule 25(d)(1) is needed here, because the party to be substituted, Dart, is already sued in his official capacity. Instead the proper remedy is simply to dismiss Sheahan in his official capacity, and this Court so orders.

Ryan (the former Director of Operations in the Sheriff's Office) in his individual capacity only, Citizens for Sheahan (a political campaign committee established on behalf of Sheahan), Cook County and other unknown persons in the Sheriff's Office and Citizens for Sheahan (FAC ¶¶6-11). Cook County's Rule 12(b)(6) motion to dismiss was previously granted on grounds not relevant to the other parties, but Cook County remains in the case for indemnification purposes. Brown pleads a class action on behalf of all employees of the Sheriff's Office who assertedly suffered negative consequences because they failed to support Sheahan's Political Enterprise (FAC ¶71).

At issue are Brown's allegations that defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") and are thus liable for monetary damages and subject to declaratory and injunctive relief (FAC ¶2). Brown also invokes 42 U.S.C. §1983 ("Section 1983") to redress the asserted violation of his First Amendment rights by all defendants other than Dart and Citizens for Sheahan (FAC ¶2), but that contention is not the target of the current motions to dismiss. Because the appropriateness of class certification was addressed in the parties' memoranda, this opinion will also resolve that issue at this stage.

## Motion To Dismiss Standards

In considering the sufficiency of a complaint under either

Rule 12(b)(1) or Rule 12(b)(6), a court must accept all of the complaint's well-pleaded factual allegations as true and draw all reasonable inferences in plaintiff's favor (see, e.g., Alicea-Hernandez v. Catholic Bishop of Chicago, 320 F.3d 698, 701 (7th Cir. 2003) as to Rule 12(b)(1) and McMillan v. Collection Prof'ls, Inc., 455 F.3d 754, 758 (7th Cir. 2006) as to Rule 12(b)(6)). While a Rule 12(b)(1) inquiry tests the sufficiency of the allegations to establish subject matter jurisdiction, a Rule 12(b)(6) review measures whether the complaint states a claim for which relief can be granted. To survive Rule 12(b)(6) scrutiny, the complaint must (1) put the defendants on "fair notice of what the...claim is and the grounds upon which it rests" (Rule 8(a)) and (2) plausibly suggest that plaintiff has a right to relief (EEOC v. Concentra Health Servs., Inc., 496 F.3d 773, 776 (7th Cir. 2007), citing and quoting Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1964-65, 1973 n.14 (2007)).

Factual Background[2]

Brown began his tenure at the Sheriff's Office as a police officer in April 1977 (FAC ¶5). After 28 years' service, he retired at the rank of sergeant (a position he had attained in early 1990) at the end of 2005 (FAC ¶5). During the 1998 election for Cook County Sheriff, Brown openly supported then

---

[2] What follows is a summary of the FAC's allegations, accepted as true for present purposes.

Sheriff Sheahan's Republican opponent through monetary donations and the erection of campaign signs (FAC ¶¶12, 15). Brown continued to support candidates who were "not part of the Democratic machine" from that time forward (FAC ¶20). Although he knew that he was "expected" to make monetary donations to Sheahan and Citizens for Sheahan as part of his employment, Brown did not (FAC ¶21).

After Sheahan's re-election as Cook County Sheriff, Brown was unhappy with his treatment within the Sheriff's Office. For one thing, in April 1999 he was involuntarily reassigned to a position in Ford Heights, Illinois despite his seniority and in violation of the procedures in the Sheriff Office's Collective Bargaining Agreement (details of the position were not posted, and employees were not given the opportunity to bid on the position before it was assigned based on seniority) (FAC ¶16). And for another, Brown requested a replacement squad car in 1999 because his five-year-old vehicle was functioning poorly, and although his peers received new squad cars on a regular basis his request was not filled until 2000, when he was given a squad car in similarly poor condition. It was not until 2003 that he received a squad car in good condition (FAC ¶¶17-18).

Brown passed the Police Lieutenant's Promotion Examination and was placed on the list of qualified candidates for promotion to the rank of lieutenant in October 2003, but he did not receive

a promotion during the two years that the list remained effective
(FAC ¶¶23-27). After publication of the promotion list Brown was
told by a higher ranking officer that to get the promotion he
needed to "call in his clout" and "make the calls" (FAC ¶32).
Five other candidates, deemed objectively less qualified by
Brown, were promoted during those two years--and four of the five
had donated money to Citizens for Sheahan or to the Cook County
Democratic Society (FAC ¶¶27-28). One of the promotions occurred
even though the pay grade did not officially exist (FAC ¶29).
Earlier promotions had also been given to sergeants and other
Sheriff's Office employees who donated to Citizens for Sheahan
(FAC ¶¶30-31).

## FAC's RICO Counts

Sheahan, Dart, Ryan and Citizens for Sheahan move to dismiss
Counts II through V of Brown's FAC.[3] All those counts look to 18
U.S.C. §1962(c)[4]:

> It shall be unlawful for any person employed by or
> associated with any enterprise engaged in, or the
> activities of which affect, interstate or foreign

---

[3] Although the Rules call for pleading in terms of a claim, as distinguished from dividing a claim into separate counts based on different theories of recovery (see NAACP v. Am. Family Mut. Ins. Co., 978 F.2d 287, 291-93 (7th Cir. 1992), Brown's FAC is organized into counts, and the motions to dismiss employ the same locution. This opinion will accordingly adhere to the same format.

[4] Citations to RICO and other provisions of the Criminal Code will take the form "Section --," omitting the prefatory "18 U.S.C."

>     commerce, to conduct or participate, directly or
>     indirectly, in the conduct of such enterprise's affairs
>     through a pattern of racketeering activity or
>     collection of unlawful debt.

Count II charges the violation of Section 1962(d) by conspiring to violate Section 1962(c), Count III charges the violation of Section 2 by aiding and abetting a violation of Section 1962(c), Count IV charges the violation of Section 1962(c) itself and Count V seeks declaratory and injunctive relief enjoining defendants from continuing those same violations in the future (FAC ¶¶98-117). Recovery is sought through Section 1964, which permits the civil recovery of treble damages from violators of Section 1962.

As <u>United States v. Turkette</u>, 452 U.S. 576, 591 (1981) has explained succinctly:

> [T]he primary purpose of [RICO] is to cope with the
> infiltration of legitimate business....

To be sure, the statute can also create liability even where the RICO-required "enterprise" is wholly illegitimate (<u>Turkette</u>, 452 U.S. at 583-87), but it is always important to remember that RICO is not meant to encompass every instance of fraud, extortion or conspiracy, no matter how appealing the prospect of treble damages is to plaintiffs.

Section 1962(c)'s fundamental requirements are (1) the existence of a "person" employed by or associated with an "enterprise" and (2) participation by the "person" in the conduct

of the "enterprise" via a "pattern of racketeering activity." Because it makes no sense to speak of a "person" being employed by or being associated with that selfsame "person," the caselaw uniformly teaches that the "person" and the "enterprise" must be distinct (Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago, 747 F.2d 384, 400 (7th Cir. 1984)(approving and adopting this Court's opinion in Parnes v. Heinold Commodities, Inc., 548 F. Supp. 20, 23-24 (N.D. Ill. 1982)), aff'd on other grounds, 473 U.S. 606 (1985).

Understandably, then, cases such as Stachon v. United Consumers Club, Inc., 229 F.3d 673, 675 (7th Cir. 2000) confirm that "[a] RICO complaint must identify the enterprise." And one form of "enterprise," as defined in Section 1961(4), is "any union or group of individuals associated in fact although not a legal entity." Here Brown pleads that "Sheahan's Political Enterprise" was an association-in-fact comprising Citizens for Sheahan, Sheahan, Dart, Ryan and others known and unknown (FAC ¶42). Although not specifically identified as RICO "persons" in the FAC, the persons he seeks to hold liable are the selfsame members of "Sheahan's Political Enterprise": Citizens for Sheahan, Sheahan, Dart and Ryan. Hence Brown's invocation of RICO is unsustainable because that conflation of "person" and "enterprise" runs afoul of the Haroco requirement.

As already stated, a RICO enterprise may be crooked through

7

and through--it need not have a legitimate existence (Turkette, 452 U.S. at 583-87). But that said, an enterprise must be more than a string of illegal acts--"[t]he 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages" (Turkette, 452 U.S. at 583). While some evidence may enter into the proof of both the pattern of racketeering activity and the existence of an enterprise, an enterprise is a structure and not merely the RICO-violative predicate acts (id.).

Brown fails to set out any existence of Sheahan's Political Enterprise independent from the predicate acts. That deficiency is highlighted in the FAC's section captioned "Sheahan's Political Enterprise ('Enterprise')" (FAC ¶¶42-48). FAC ¶42 asserts that Sheahan's Political Enterprise was an association-in-fact comprising the defendants. Then FAC ¶43, though it purports to infuse Sheahan's Political Enterprise with structure, really does nothing more than recite that Sheahan, Citizens for Sheahan and the Sheriff's Office made up that Enterprise:

> The structure of Sheahan's Political Enterprise is the then-Sheriff of Cook County, Sheahan; his political campaign fund, Citizens for Sheahan; and the Sheriff's Office, of which Sheahan was the final policy maker and over which he had command and control.

That gap is not filled in by what follows. FAC ¶¶44, 45 and 46 do nothing to establish Sheahan's Political Enterprise as an enterprise, but speak instead to individuals associated with the

8

Enterprise. FAC ¶47 states that a pattern of racketeering existed (including at least two predicate acts)--but, as explained by Turkette, the existence of an enterprise and the existence of a pattern of racketeering are separate inquiries.[5] Lastly, FAC ¶48 states that defendants' conduct is likely to continue and is separate and distinct from the business of the Sheriff's Office. But that assertion does not do the job, for it will be remembered that the Sheriff's Office is not itself the alleged enterprise--instead that status is ascribed to the purported association in fact.[6]

In that respect the existence of an enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit" (Turkette, 452 U.S. at 583). Although a RICO enterprise need not be a formal or legally recognized organization, organizational structure is required (Stachon, 229 F.3d at 675). And that ongoing structure must consist of "persons associated

---

[5] Some further clue to counsel's failure to appreciate RICO's requirements is thus provided by the inclusion of FAC ¶47 in the section where it appears, rather than in the section entitled "Predicate Acts & the Pattern of Racketeering Activity."

[6] Brown Supp. Mem. 10-12 asks this Court to consider alternatively that the Sheriff's Office is the enterprise and that Sheahan, Dart, Ryan and others used it as a passive instrument ("victim") of their racketeering activity. Not only is that notion expressed nowhere in the FAC, it simply will not do for a litigant--perhaps educated as to applicable legal concepts by a motion to dismiss--to reshape the facts in an attempt to fit the law.

9

through time, joined in purpose, and organized in a manner amenable to hierarchial [sic] or consensual decision making" (id.). Such an enterprise must be "more than a group of people who get together to commit a pattern of racketeering activity," but "must be an organization with a structure and goals separate from the predicate acts themselves." (id. (internal quotation marks omitted)). Seeking to define an enterprise by what it does fails to establish structure, for setting out a pattern of racketeering does not demonstrate that an enterprise exists (id. at 676). As Jennings v. Emry, 910 F.2d 1434, 1440 (7th Cir. 1990) has put it:

> An enterprise is distinct, separate, and apart from a pattern of racketeering activity: although a pattern of racketeering activity may be the means through which the enterprise interacts with society, it is not itself the enterprise, for an enterprise is defined by what it is, not what it does.

Much like the plaintiffs in Stachon and Richmond v. Nationwide Cassel L.P., 52 F.3d 640 (7th Cir. 1995), Brown claims the enterprise is made up of known and unknown persons--and much like the complaints in those cases, Brown's "nebulous, open-ended description of the enterprise does not sufficiently identify this essential element of the RICO offense" (Stachon, 229 F.3d at 675, quoting Richmond, 52 F.3d at 645). Every conspiracy does not of itself create a RICO enterprise or a RICO violation (Bachman v. Bear, Sterns & Co., 178 F.3d 930, 932 (7th Cir. 1999)). Although duration of activity for years is some indication of structure

10

that may suggest a RICO enterprise, it does not do the job without other indicia of structure (<u>Bachman</u>, 178 F.3d at 932). Brown fails to plead the necessary structure despite his allegation of a pattern of racketeering activity continuing for years (FAC ¶47).

Even though an enterprise need not contain much structure (<u>Richmond</u>, 52 F.3d at 645), that is still an essential requirement. And it is one that Brown's FAC fails to meet. Brown's FAC alleges that the group of defendants committed two or more predicate acts, but once again that is insufficient for RICO enterprise purposes. Structure is the key ingredient, and it is missing from the FAC. Brown's allegations establish that the only common cause assertedly shared by defendants is the commission of the complained-of conduct, and that runs afoul of the principle announced in <u>Jennings</u> and like cases. Hence FAC Counts II through V are dismissed.

<u>Injunctive Relief</u>

In each of the FAC's counts, including Count I, Brown asks this Court to impose a permanent injunction enjoining defendants from engaging in the practices outlined in the FAC and to retain jurisdiction for enforcement purposes. As a <u>former</u> employee of the Sheriff's Office, Brown lacks standing to seek such injunctive relief.

Because he was already a retiree when he filed this lawsuit,

Brown is in no danger of future harm from the assertedly extortionate demands made on Sheriff's Office employees.[7] Absent such threat of future injury, Brown lacks a viable case or controversy as required by Article III of the Constitution (City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983)). All prayers for injunctive relief in the FAC are therefore also dismissed.

## Class Claims

Class certification requires the satisfaction of all of the provisions of Rule 23(a), plus fitting into one of the categories of Rule 23(b). Because Brown strikes out in the latter respect, this opinion turns directly to Rule 23(b).

Rule 23(b)(1) is clearly inapplicable to this claim. FAC ¶¶82 and 83 provide a rote recitation of both Rule 23(b)(1)(A) and (B), but such unsubstantiated references cannot stand when unsupported by factual assertions (Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981), aff'd, 460 U.S. 325 (1983)). With injunctive relief out of the case, the potential risks identified in Rule 23(b)(1) simply do not exist.

Rule 23(b)(2) is knocked out of contention as well by Brown's lack of standing to assert a claim for injunctive relief.

---

[7] Indeed, Brown further fails to demonstrate any fear of future harm because all of the allegedly extortionate demands were connected to former Sheriff Sheahan. Sheahan no longer retains a position in the Sheriff's Office.

12

As the Advisory Note to the 1966 amendment of Rule 23 (quoted in Lemon v. Int'l Union of Operating Eng'rs, Local 139, 216 F.3d 577, 580 (7th Cir. 2000)) explains, Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Although Brown does request a declaratory judgment, his prayer for monetary damages (including punitive damages) is now predominant, rendering class certification under Rule 23(b)(2) unavailable.

That leaves only potential certification under Rule 23(b)(3), as to which Lemon, 216 F.3d at 581 states:

> In this category of lawsuit, the class members may seek either predominantly legal or equitable remedies, but each member must share common questions of law or fact with the rest of the class, therefore making class-wide adjudication of the common questions efficient compared to repetitive individual litigation of the same questions.

Indeed, under that Rule those common questions must predominate over individual questions so as to make the class action the superior method of disposition.

On that score Brown asserts that questions of law or fact common to the class members predominate over questions affecting only individual members (FAC ¶85). But that is clearly not the case--once again, such unsupported conclusions need not be credited (Briscoe, 663 F.2d at 723). Each putative class member's situation would be different--the extortionate demands made of each and the negative consequences to each of refusing

13

such demands would be manifested in unique ways, with concomitant differences in the individual damages sustained.

Even FAC ¶71's proposed class definition highlights the myriad ways in which class members could have suffered retaliation-- reprimands, discipline, lack of promotion, transfer, demotion, termination or requested resignation are just the named examples.[8] And as the breadth of that spectrum plainly connotes, damages would also be highly individualized--the range of injury would vary greatly (contrast a putative class member who suffered termination with one who sustained relatively minor retaliation such as the delayed fulfillment of a request for a replacement squad car).

In sum, common questions clearly do not predominate over individual ones in Brown's proposed class. With the last possibility--Rule 23(b)(3)--thus rendered unavailable, Brown's proposed class is uncertifiable.

## Conclusion

As stated early on, Sheahan is dismissed as a party in his official capacity. With the dismissal of Counts II through V of the class action allegations and of the prayer for class-based relief, much of the FAC becomes surplusage. And with those

---

[8] If this opinion had to look at the Rule 23(a) standards to resolve the matter of class certification (as it does not, because Brown has flunked every facet of the Rule 23(b) test), what has been said in the text also shows that Brown fails to satisfy at least the essential element of typicality.

things stripped away, all that remains of Brown's FAC is his individual Section 1983 claim that he sustained damages via the denial of promotions during the two-year period not barred by limitations.

That leaves only Sheahan and Ryan as defendants in their individual capacities. As for Dart in his official capacity (he is not targeted individually in Count I), that potential liability can survive only as a Monell-type claim. But only a moment's thought reveals that the latter claim would inject into the case a wealth of pattern-type evidence (the extensive factual areas that have just been stripped away in substantive terms)--evidence that is entirely extraneous to Brown's own individual substantive claim. Thus if (for example) the Sheriff's Office were to undertake to indemnify Sheahan and Ryan against any award of compensatory damages[9] (something that has been done in other Section 1983 actions on this Court's calendar), that would streamline the proof at trial considerably.[10]

This action is set for a next status hearing at 9 a.m.

---

[9] Newport v. Fact Concerts, 453 U.S. 247 (1981) insulates Dart in his official capacity from any award of punitive damages. Hence no indemnification undertaking as to any such award against the individuals could be expected of Dart.

[10] To the extent that discovery has not been undertaken as to the pattern-type allegations, an indemnification undertaking would obviate the need for any further activity in that area.

April 23, 2008. At that time the parties should be prepared to address the future course of proceedings in this action.

                                   _____
                                   Milton I. Shadur
                                   Senior United States District Judge

Date:  April 4, 2008